UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GERALD L. REED, | |
| **Plaintiff,** | |
| v. | CAUSE NO. 2:23-CV-125-JTM-JPK |
| TODD WASNER, et al., | |
| **Defendants.** | |

### OPINION and ORDER

Gerald L. Reed, a prisoner without a lawyer, filed an amended complaint. (DE # 7.) As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Reed is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Reed alleges on February 6, 2023, he began experiencing shortness of breath, headaches, and chest pain after he discovered mold in his cell at the Lake County Jail. He was examined by medical on February 9, 2023, and was prescribed an albuterol

inhaler for his breathing issues. He was also "scheduled numberous (sic) x-rays, etc." (DE # 7 at 2.) However, he claims medical failed to document the fact that he told them there was mold in his cell. He was subsequently evaluated by mental health professionals who similarly failed to document the mold. On February 22, 2023, during a routine compliance check, Assistant Warden Brown assessed Reed's cell. Reed asked Assistant Warden Brown to look at the mold "up under the toilet on the floor, next to the toilet." Assistant Warden Brown did so and took pictures of the mold. She immediately radioed her staff to address the issue, and Maintenance Worker Meyer came to Reed's cell and cleaned the mold in the "pipe chase." (*Id*. at 3.) He returned on March 10, 2023, and cleaned up "all the mold on the floor." (*Id*.)

Reed requested to be transferred out of the cell, but his request initially fell on "deaf ears." (*Id*.) He wrote to Warden Wasner on February 26, 2023, Assistant Warden Brown on February 28, 2023, and submitted several grievances. Reed "went on a hunger strike" shortly thereafter and requested to be moved out of the cell. Accordingly, he was transferred to a different cell and placed in protective custody. Reed takes issue with the placement because he had "not asked to be in P.C." where there are mentally ill inmates who "throw[] piss and do-do on other detainees, staff, and nurses." (*Id*.) He has sued Warden Wasner, Assistant Warden Brown, Maintenance Worker Meyer, and two medical professionals—whom he refers to as Jane Doe and John Doe—for injunctive relief in the form of "prepar[ing] the unit/or building instruction that nobody should have to endure the suffering a[nd] pain I went through." (*Id*. at 4.)

Reed alleges the events occurred while he was confined awaiting trial. Therefore, for purposes of this order, the court will presume his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

> The Due Process Clause of the Fourteenth Amendment imposes obligations on government officials to safeguard the health and safety of pretrial detainees, and section 1983 provides a cause of action for detainees . . . to vindicate those constitutional guarantees. To state a claim for inadequate medical care, a complaint must allege that: (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [detainee]'s medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [detainee]'s medical need; and (4) the defendant acts purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm.

*Gonzalez v. McHenry Cty.*, 40 F.4th 824, 827-28 (7th Cir. 2022) (citations and quotation marks omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). It is not enough that a medical professional be mistaken in his or her judgment. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, an inmate must show that the treatment decision was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "[N]egligent conduct does not offend the Due Process Clause," and thus allegations of negligence, even gross negligence, do not state a Fourteenth Amendment claim. *Miranda*, 900 F.3d at 353. Moreover, prisoners are "not entitled to demand specific care," *Walker v. Wexford*

3

*Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Reed has sued medical professionals Jane Doe and John Doe for allegedly failing to provide him with sufficient care. He alleges he was examined by medical staff within three days of complaining of shortness of breath, headaches, and chest pain. He was prescribed an albuterol inhaler to help with his breathing, scheduled for several x-rays which revealed nothing significant, and was referred to the mental health department. Reed's major concern is that the medical professionals didn't document the mold issue in his records. Even if true, these allegations don't state a plausible constitutional violation under the standard described above. *See e.g. Miranda*, 900 F.3d at 353 (negligent conduct does not trigger Fourteenth Amendment protection); *see also Walker*, 940 F.3d at 965 (inmates are not entitled to dictate the medical care they receive). Accordingly, Reed has not stated any plausible claims against Jane Doe or John Doe.

Reed also takes issue with the condition of his cell. "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). However, they must be provided with "the minimal civilized measure of life's necessities," which includes "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). The Fourteenth Amendment "prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or

4

second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Id.* In determining whether a challenged action is reasonable, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). As noted above, "negligent conduct does not offend the Due Process Clause," and thus allegations of negligence, even gross negligence, do not state a Fourteenth Amendment claim. *Miranda*, 900 F.3d at 353.

Reed has not plausibly alleged the type of deprivation that would amount to a constitutional violation. He complains there was some mold on the floor under the toilet in his cell, but he admits Assistant Warden Brown attempted to remedy the problem the day she became aware of it by directing maintenance to address the issue. Maintenance Worker Meyer arrived that same day to clean up the mold, and he returned about two weeks later to remove the remainder of it. Moreover, when Reed went on a hunger strike and requested to be transferred, he was removed from the cell where the mold had been and placed in protective custody. At most, Reed describes negligence in the maintenance of his cell, but negligence—even "gross" negligence—is not enough to state a Fourteenth Amendment claim. *Miranda*, 900 F.3d at 353; *see also Brown v. Picknell*, No. 20-2904, 2021 WL 3028152, at *3 (7th Cir. July 19, 2021) (even if the conditions were sufficiently serious, the fact that the defendants responded reasonably in the situation by, among other things, "asking maintenance to resolve the issue" foreclosed the Fourteenth Amendment claim). Therefore, he has failed to state a claim with regard to the condition of his cell.

5

To the extent Reed is attempting to bring a claim against Warden Wasner based on his transfer from the general population to protective custody, that claim fails as well. The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[I]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).[1]

Here, Reed doesn't allege the duration of his confinement was extended—he simply takes issue with his placement in protective custody. The mere fact that there

---

[1] Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher. *See e.g. Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 & n.2–3 (7th Cir. 2009) (collecting cases and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added).

were disruptive, mentally ill inmates in protective custody along with him does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484.

Accordingly, Reed's amended complaint doesn't state any plausible claims. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content). However, in the interests of justice, the court will allow him an opportunity to file a second amended complaint if, after reviewing the court's order, he believes that he can state a claim consistent with the allegations he has already made under penalty of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

As a final matter, Reed filed a motion to compel. (DE # 11.) In it, he asks the court to order the Marshals to serve the defendants, to order the defendants to respond to his complaint, to order an inspection of the Lake County Jail, and to permit him to engage in discovery. Because Reed has not been granted leave to proceed on any claims, these requests are both premature and unnecessary.

For these reasons, the court:

(1) **DENIES** the motion to compel (DE # 11);

(2) **GRANTS** Gerald L. Reed until **January 11, 2024**, to file a second amended complaint; and

(3) **CAUTIONS** Gerald L. Reed if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims upon which relief can be granted.

**SO ORDERED.**

Date: December 6, 2023

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT